**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States Liability Insurance Company,<br><br>           Plaintiff,<br>vs.<br><br>Xiangnan Gong, et al.,<br><br>           Defendants. | No. CV-18-01087-PHX-SPL<br><br>**ORDER** |

Plaintiff United States Liability Insurance Company (the "Plaintiff") initiated this lawsuit against defending parties Xiangnan Gong ("Gong"), Zhuo Zhan Kuang, Jane Doe Kuang,[1] and Healthy Chinese Herbs Company Incorporated seeking a declaratory judgment. (Doc. 1) The Plaintiff moved for summary judgement on declaratory judgment relief (the "Motion"). (Doc. 39) The Motion was fully briefed on December 18, 2018. (Docs. 50, 53, 58, 59) Because it would not assist in resolution of the instant issues, the Court finds the pending motion is suitable for decision without oral argument. See LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998). The Court's ruling is as follows.

---

[1] Jane Doe Kuang is identified as Tina Kuang in a response to the Motion. (Doc. 50 at 1)

## I. Background[2]

Defendant Zhuo Zhan Kuang ("Z.Z. Kuang") and Jane Doe Kuang operate a health and natural food store named Healthy Chinese Herbs Company, Inc. ("HCHC," and together with Z.Z. Kuang and Jane Doe Kuang, the "Defendants"). (Doc. 40 at 1–2; Doc. 51 at 2) HCHC sells Chinese herbal medicines, ointments, packaged teas, and herbs. (Doc. 40 at 2) The Plaintiff alleges that Z.Z. Kuang held himself out to be a medical or naturopathic doctor, and Z.Z. Kuang was known as "Doctor Kuang" throughout the Chinese community. (Doc. 40 at 2)

A woman named Jie Xu sought out Z.Z. Kuang to receive treatment for neck pain. (Doc. 40 at 2) Z.Z. Kuang "examined and treated Xu at HCHC for neck pain on multiple occasions and prescribed various remedies, herbs, and/or medicines to Xu which were dispensed" by HCHC. (Doc. 40 at 2) Z.Z. Kuang "advised Xu [of] his various remedies, herbs, and/or medicines, asserting the substances would heal and cure her condition" and instructed Xu not to seek out medical care. (Doc. 40 at 2) On May 30, 2017, Xu was found unconscious in her home and transported to the hospital for medical treatment. (Doc. 40 at 3) At the hospital, Xu was diagnosed with severe septic shock with organ failure, among many other ailments, and she died on May 31, 2017. (Doc. 40 at 3) On April 30, 2018, Gong, Xu's husband, filed an amended complaint against the Defendants in the Maricopa County Superior Court (the "Wrongful Death Lawsuit"), alleging causes of action for negligence per se and fraudulent misrepresentation, among other claims. (Doc. 40 at 1)

The Plaintiff issued a Commercial General Liability Policy to HCHC effective August 1, 2016 to August 1, 2017 (the "Insurance Policy"). (Doc. 40 at 4) The Plaintiff is providing the Defendants with a defense to the Wrongful Death Lawsuit under a reservation of rights, but the Plaintiff initiated this lawsuit seeking a declaratory judgment

---

[2] Unless otherwise noted, the following facts are undisputed between the parties for the purpose of resolving the Motion. The Court notes the Defendants' position denying these facts for the purpose of defending the underlying lawsuit pending before the Maricopa County Superior Court (CV2018-090449).

that it has no duty to defend or indemnify the Defendants for the Wrongful Death Lawsuit pursuant to the terms of the Insurance Policy. (Doc. 40 at 9; Doc. 1)

## II. Legal Standard

A court shall grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party "show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Material facts are those facts "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact arises if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party moving for summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the movant is able to do such, the burden then shifts to the non-movant who, "must do more than simply show that there is some metaphysical doubt as to the material facts," and instead must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

## III. Analysis

### A. <u>Appropriateness of Summary Judgment Ruling</u>

The Plaintiff seeks a declaratory judgment from the Court finding that the Insurance Policy does not require the Plaintiff to defend the Wrongful Death Lawsuit pending against the Defendants. (Doc. 39 at 1) The Defendants and Gong argue that the Motion is premature because Arizona law requires the Court to consider facts not yet developed in discovery in its analysis of whether the Plaintiff has a duty to defend under the Insurance Policy. (Doc. 50 at 4; Doc. 53 at 6–7) In response, the Plaintiff argues (i) that Arizona courts have found that summary judgment is appropriate on the issue of

an insurer's duty to defend prior to the conclusion of an underlying case, and (ii) summary judgment is appropriate because there are no genuine issues of material fact between the parties to this case.

First, the Court notes that there are no genuine disputes of material fact between the parties. The primary question before the Court is whether the complaint in the Wrongful Death Lawsuit alleges any claim within the Insurance Policy's coverage. The Court notes that the Insurance Policy states that the Plaintiff has "the right and duty to defend the insured against any 'suit'" seeking damages for bodily injury or property damage covered under the Insurance Policy. (Doc. 40-4 at 21) In Arizona, if any claim alleged in the complaint is within the policy's coverage, the insurer has a duty to defend the entire suit, because it is impossible to determine the basis upon which the insurer will recover (if any) until the action is completed." *Nat'l Fire Ins. Co. of Hartford v. James River Ins.*, 162 F. Supp. 3d 898, 913 (D. Ariz. 2016) (citing *Nucor Corp. v. Employers Ins. Co.*, 296 P.3d 74, 83–84 (Ct. App. 2012)). Furthermore, the interpretation of an insurance contract is a question of law for the Court to decide. *Id.* at 903 (citing *Liristis v. Am. Family Mut. Ins. Co.*, 61 P.3d 22, 26 (Ct. App. 2002)).

The Court also notes that, in similar cases where an insurer sought a declaratory judgment abdicating its duty to defend an insured party, precedent supports addressing a motion for summary judgment independent of the progress in the underlying lawsuit. See *Nat'l Fire*, 162 F. Supp. 3d at 901–902 (finding that the insurer had a duty to defend the insured even after the underlying case settled); *757BD LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 330 F. Supp. 3d 1143, 1148 (D. Ariz. 2018) (stating "Summary judgment is particularly appropriate to resolve questions of insurance coverage, since the interpretation of a written contract is a matter of law to be determined by the court" and upholding an insurer's decision to not defend the insured party prior to the underlying lawsuit's resolution); *Kepner v. W. Fire Ins. Co.*, 509 P.2d 222, 225 (1973) (stating "a testing of the insurer's liability may take the form of a declaratory judgment brought in advance of the third party's action"). Accordingly, the Court finds that it is appropriate

to move forward with considering whether summary judgment is warranted at this time.

**B.     Absolute Professional Liability Exclusion**

The "Absolute Professional Liability Exclusion" section of the Insurance Policy states that the Insurance Policy "does not insure against loss or expense, including but not limited to the cost of defense, arising out of or resulting from, . . . the rendering of or failure to render professional services of any kind, or any error or omission, malpractice or mistake in the rendering of professional services of any kind, committed or alleged to have been committed by or on behalf of any insured." (Doc. 40-4 at 46)  The Plaintiff argues that all of the claims set forth in the Wrongful Death Lawsuit arise out of the Defendants' professional practice of naturopathic medicine, which is explicitly excluded from coverage under the Insurance Policy. (Doc. 39 at 8)  In response, the Defendants argue that the Absolute Professional Liability Exclusion does not apply to the majority of the claims in the Wrongful Death Lawsuit because those claims do not arise from the performance of or failure to perform professional services. (Doc. 50 at 8) Gong argues that the Plaintiff does not sufficiently argue that the services at issue provided by the Defendants were professional services under Arizona law. (Doc. 53 at 9)

1. Naturopathic Medicine and Professional Services Under Arizona Law

Arizona law recognizes naturopathy as a professional practice that generally requires a license. *Thompson v. Thompson*, 2017 WL 6376168, at 2 (Ariz. Ct. App. Dec. 14, 2017); *Rastetter v. Weinberger*, 379 F. Supp. 170, 171 (D. Ariz. 1974); *Gates v. Kilcrease*, 188 P.2d 247, 250 (1947).  Under Arizona law, the practice of naturopathic medicine[3] "means a medical system of diagnosing and treating diseases, injuries, ailments, infirmities and other conditions of the human mind and body, including by natural means, drugless methods, drugs, nonsurgical methods, devices, physical, electrical, hygienic and sanitary measures and all forms of physical agents and

---

[3] Naturopathic medicine is defined as "medicine as taught in approved schools of naturopathic medicine and in clinical, internship, preceptorship and postdoctoral training programs approved by the board and practiced by a recipient of a degree of doctor of naturopathic medicine licensed pursuant to this chapter." Ariz. Rev. Stat. Ann. § 32-1501.

5

modalities." Ariz. Rev. Stat. Ann. § 32-1501. The Defendants' response does not admit that the Defendants participated in the practice of naturopathy; however, the complaint in the Wrongful Death Lawsuit clearly accuses Z.Z. Kuang of representing himself as a naturopathic doctor and "prescribing a substitute for medical care" through the use of "various remedies, herbs, and/or medicines" and substances. (Doc. 40-1 at 3–4)

Notably, naturopathic licensing regulations do not apply to "[a] person who is not licensed or certified by the board and who sells food articles to supplement the diet of a person or who sells a natural substance that does not require a prescription." Ariz. Rev. Stat. Ann. § 32-1521. However, the allegations in the complaint allege that the Defendants' actions went far beyond simply selling food articles and natural substances, as the complaint alleges that the Defendants took the steps of diagnosing the decedent's medical condition and prescribed a series of treatments to cure the decedent. (Doc. 40-1 at 3–4) Accordingly, the Court finds that the complaint sufficiently alleges that the Defendants provided professional services through the practice of naturopathic medicine.

2. Counts 1, 2, 3, 5, and 6

Count 1 of the complaint alleges a cause of action for negligence per se arising out of Z.Z. Kuang's unlicensed practice of naturopathic medicine. (Doc. 40-1 at 6) Count 2 of the complaint alleges a cause of action for respondeat superior arising out of Z.Z. Kuang's actions during the scope of his employment with HCHC. (Doc. 40-1 at 8) Count 3 of the complaint alleges a cause of action for negligence arising out of the Defendants' failure to exercise a reasonable duty of care in "providing medical care" to the decedent. (Doc. 40-1 at 8) Count 5 of the complaint alleges a cause of action for fraudulent misrepresentation arising out of Z.Z. Kuang's performance of naturopathic medical examinations of the decedent. (Doc. 40-1 at 10) Finally, Count 6 of the complaint alleges a cause of action for negligence arising out of representations made by the Defendants assuring the decedent that she should not seek medical care. (Doc. 40-1 at 12)

In order to determine whether the Plaintiff has a duty to defend pursuant to the terms of the Insurance Policy, the Court may look at the face of the claims set forth in the

complaint to determine whether the alleged claims could possibly be covered by the Insurance Policy. In this case, it is clear to the Court that Counts 1, 2, 3, 5, and 6 of the complaint are directly tied to the Defendants' alleged unlicensed and improper practice of naturopathic medicine. The allegations in the complaint clearly state that most of the claims arise out the Defendants' unlawful practice of naturopathic medicine, which is recognized as a professional service under Arizona law. Therefore, the Court finds that the plain terms of the Absolute Professional Liability Exclusion abdicate the Plaintiff of any duty to defend the Defendants in the Wrongful Death Lawsuit. Accordingly, the Court finds that the Plaintiff has no duty to defend the Defendants on Counts 1, 2, 3, 5 and 6 of the complaint, and the Motion will be granted as to those claims.

### C. <u>Products-Completed Operations Hazard Exception</u>

The "Products-Completed Operations Hazard" section of the Insurance Policy states that the Insurance Policy "does not apply to 'bodily injury' or 'property damage' included within the 'products-completed operations hazard'". (Doc. 40-4 at 39) Products-completed operations hazard includes "all 'bodily injury' and 'property damage' occurring away from premises [owned or rented by the Defendants] and arising out of '[the Defendants'] product[4] or '[the Defendants'] work." (Doc. 40-4 at 35) Count 4 of the complaint alleges a cause of action for consumer fraud arising out of the Defendants' actions in selling their merchandise to the decedent. (Doc. 40-1 at 9) However, the plain terms of the Insurance Policy state that the Insurance Policy does not apply to injuries caused by the Defendants' products away from the Defendants' store premises. Count 4 of the complaint explicitly focuses on the deceptive practices used by the Defendants to sell merchandise to the decedent, which allegedly contributed to the decedent's death. Count 4 also arises out of the Defendants' role in providing professional services, so the Plaintiff has no duty to defend this claim against the Defendants for the aforementioned reasons. Accordingly, the Court finds that the plain

---

[4] Product is defined as "any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of" by the Defendants. (Doc. 40-4 at 35)

terms of the Insurance Policy do not cover the claim against the Defendants related to the sale of their merchandise, and the Motion will be granted as to Count 4 of the complaint.

### D. Indemnification and Punitive Damages

The Court agrees with the defending parties that punitive damages are not subject to the Plaintiff's duty to defend the Wrongful Death Lawsuit. (Doc. 50 at 11; Doc. 53 at 15) However, the Plaintiff requests for the Court to grant summary judgment on the issue of whether the Plaintiff has a responsibility to indemnify the Defendants for any claims brought in the Wrongful Death Lawsuit, including punitive damages. (Doc. 39 at 14) Under Arizona law, the duty to defend carries a conditional obligation to indemnify until it becomes clear that there can be no recovery within the insuring clause. *Navigators Specialty Ins. Co. v. Nationwide Mut. Ins. Co.*, 50 F. Supp. 3d 1186, 1197 (D. Ariz. 2014). In this case, it is clear to the Court that there is no potential for liability that arguably comes within the scope of the insurance coverage provided by the Insurance Policy because all of the substantive claims present in the complaint are specifically excluded from the coverage offered by the Insurance Policy.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 39) is **granted**; and

**IT IS FURTHER ORDERED** that the Clerk of Court shall terminate this case and enter judgment accordingly.

Dated this 15th day of August, 2019.

Honorable Steven P. Logan
United States District Judge